T.C. Summary Opinion 2015-37

UNITED STATES TAX COURT

CHARLES D. TRAINITO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7223-14S.                     Filed June 23, 2015.

<u>Kevin Kilduff</u> and <u>Drew A. Morris</u>, for petitioner.

<u>R. Jeffrey Knight</u>, <u>Janet F. Appel</u>, and <u>Michael E. D'Anello</u>, for respondent.

SUMMARY OPINION

NEGA, <u>Judge</u>: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed. Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case. Unless otherwise indicated, all subsequent section references are to the Internal Revenue

Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,294 in petitioner's 2011 Federal income tax. The issues for decision are whether petitioner (1) is liable for the 10% additional tax under section 72(t) for an early distribution from a qualified retirement plan and (2) had cancellation of debt income of $3,186 in 2011.

Background

Some of the facts have been stipulated and are so found. Petitioner was born in 1966 and resided in Massachusetts at the time he filed his petition.

Petitioner was employed by the City of Boston as a traffic officer from 1994 to 1997. Beginning in 1997 petitioner was employed by the City of Boston Department of Environmental Health (DEH). Petitioner's duties with DEH involved lifting heavy manhole covers and placing rat bait as a means of decreasing the city's rat population. Petitioner's employment with DEH was terminated in 2004, but he was rehired in 2005 and continued working for DEH until October 2010. In addition to his work with DEH, petitioner worked part time as a chef at an Italian restaurant in Boston. Petitioner resigned from DEH on October 23, 2010, and continued to work as a chef at the Italian restaurant.

Petitioner was diagnosed with type 2 diabetes in 2005. As a result of his diabetes, petitioner sometimes experienced symptoms such as blurry vision and neuropathy, which he described as a "burning sensation" that feels like "needles". Petitioner has poorly managed his diabetes over the years. While he was working for DEH, petitioner took medications to alleviate the symptoms of his diabetes, but these medications did not always completely mitigate his neuropathy. Petitioner attributes his resignation from his job with DEH in October 2010 to problems stemming from diabetes, including being unable to perform the required task of lifting the heavy manhole covers. Petitioner did not provide evidence as to whether he considered applying for disability benefits from DEH. Following his resignation, petitioner ceased taking medication to treat his diabetes.

For one to two weeks before June 12, 2011, petitioner experienced nausea, vomiting, and diarrhea and was unable to work as a result of these ailments. Petitioner spoke with his mother by telephone on June 11, 2011, and complained of weakness and a scratchy throat. Family members, alarmed at being unable to reach petitioner the following day, contacted Emergency Medical Services (EMS). EMS personnel discovered petitioner unconscious at his home on June 12, 2011, and determined that he had lapsed into a diabetic coma. Petitioner was hospitalized from June 12 to July 21, 2011, as a result of the coma and

complications, including fevers and pneumonia. The coma resulted in muscle atrophy and the reduced use of an arm and a leg. As a result petitioner had difficulty performing basic tasks such as tying his shoes. Petitioner provided the Court with over 300 pages of medical records relating to his treatment for the diabetic coma. After the coma and his release from the hospital, petitioner applied for disability benefits with the Massachusetts Department of Transitional Assistance on March 16, 2012.

Petitioner had a retirement savings account with the City of Boston Retirement Board (retirement board). On April 22, 2011, petitioner received a distribution of $22,510.97 from the retirement board, which represents a gross distribution of $28,138.21 less $5,627.24 in Federal income tax withheld. There are no facts in evidence about the use to which petitioner applied these proceeds. Petitioner filed a Form 1040, U.S. Individual Income Tax Return, for tax year 2011 on November 5, 2012. He included with his tax return a Form 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts, claiming the distribution was exempt from the 10% additional tax on early distributions because of his permanent disability. Separate and apart from the distribution from petitioner's retirement account, on August 25, 2011, Wells Fargo Bank canceled $3,186 of debt that petitioner owed. Petitioner did not report

receiving any income from the cancellation of debt. Petitioner does not dispute that the debt was discharged but rather argues that the section 108(a)(1)(B) exclusion applies.

## Discussion

### I.      Burden of Proof

In general, the Commissioner's determination as to the taxpayer's tax liability is presumed correct, and the taxpayer bears the burden of proving otherwise. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). This burden may shift to the Commissioner if the taxpayer introduces credible evidence with respect to any relevant factual issue and meets other conditions, including maintaining required records. See sec. 7491(a). Petitioner has not argued or otherwise demonstrated that the burden of proof shifts to respondent, and accordingly, petitioner bears the burden of proving that respondent's determination is incorrect.

### II.     Early Distribution From Retirement Account

Section 72(t)(1) imposes a 10% additional tax on a taxpayer who receives an early distribution from a qualified retirement plan, unless such taxpayer qualifies for one of the exemptions found in paragraph (2). As applicable in this case, section 72(t)(2)(A)(iii) provides an exemption for distributions which are

attributable to the taxpayer's being disabled within the meaning of section 72(m)(7). Subsection (m)(7) provides that a taxpayer is considered disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." The "substantial gainful activity" referenced in subsection (m)(7) is construed as the activity, or a comparable activity, customarily engaged in by the taxpayer before the onset of the disability. Sec. 1.72-17A(f)(1), Income Tax Regs.

The determination as to whether an individual is disabled is to be made with reference to all the facts. Id. subpara. (2). Primary consideration is given to the nature and severity of the taxpayer's impairment, and other considerations may include the taxpayer's education, training, and work experience. Id. subpara. (1). For a taxpayer to be considered disabled the impairment must be expected to continue for a long and indefinite period or result in the death of the individual. Id. subpara. (3). Further, an impairment is not considered a disability if it is remediable or if it can be diminished by the individual with reasonable effort and safety to the extent that the individual will not be prevented by the impairment from engaging in his customary or any comparable substantial activity. Id. subpara. (4). Examples of impairments that are normally considered to prevent

substantial gainful activity include progressive physical diseases, such as diabetes, that have resulted in the physical loss or atrophy of a limb as well as mental diseases, such as psychosis or severe psychoneurosis, that require continued institutionalization or constant supervision of the afflicted individual.  Id. subpara. (2)(ii), (vi).  However, the presence of such an impairment does not, by itself, qualify the individual as disabled within the meaning of section 72(m)(7); the impairment must be assessed with reference to whether it prevents the individual from engaging in substantial gainful activity.  Sec. 1.72-17A(f)(2), Income Tax Regs. (flush language).

Section 72(m)(7) places the burden of proving disability on the taxpayer, requiring proof "in such form and manner as the Secretary may require".  Petitioner provided records to the Court that relate to the diabetic coma he suffered on June 12, 2011, but he did not provide any medical records for periods before this date, including medical records for periods before April 22, 2011, the date of the distribution of his retirement funds.  Petitioner testified at trial that, following his diagnosis with diabetes in 2005, he saw a primary care doctor twice per month until his resignation from his job with DEH in October 2010.  However, despite receiving frequent treatment, petitioner did not produce any medical records relating to these visits, nor did his primary care doctor testify on his behalf.  Nor

did he produce any records that would corroborate his claims that he suffered from depression at any point before the distribution on April 22, 2011.

Petitioner argues that he was disabled within the meaning of section 72(m)(7) because he suffered from diabetes, or alternatively, that he suffered from depression. However, notwithstanding the severe medical event petitioner experienced on June 12, 2011, the relevant date we must consider is April 22, 2011, because section 72(t)(2)(A)(iii) requires that the distribution be attributable to the taxpayer's being disabled. A taxpayer may not escape the 10% early withdrawal penalty by suffering a disability at just any point during the tax year; rather the disability must be present at the time the distribution is made. See, e.g., Kopty v. Commissioner, T.C. Memo. 2007-343 (finding that distributions were not attributable to disability where diagnosis of heart condition was not made until after taxpayer received distributions from his retirement fund), aff'd, 313 Fed. Appx. 333 (D.C. Cir. 2009). Thus the fact that petitioner suffered a diabetic coma on June 12, 2011, does not indicate whether he was disabled on April 22, 2011. Petitioner undoubtedly suffered from diabetes on April 22, 2011, but he has not provided sufficient evidence to show that his diabetes caused him to be disabled within the meaning of section 72(m)(7). See sec. 1.72-17A(f)(2), Income Tax Regs. (flush language).

Alternatively, petitioner argues that he was disabled on April 22, 2011, because of depression. Petitioner claimed he had clinical depression before suffering the coma on June 12, 2011, with the depression arising from issues with family members, the loss of his job, his diabetes diagnosis, and a gambling addiction. Again petitioner did not provide any medical records that would support a diagnosis of depression at any time, nor did any other individuals testify in this regard. Petitioner's uncorroborated testimony is insufficient to establish disability due to depression within the meaning of section 72(m)(7). See, e.g., Kowsh v. Commissioner, T.C. Memo. 2008-204 (finding no disability where the taxpayer did not offer documentary evidence or testimony from medical professionals to corroborate his depression and anxiety); see also Dwyer v. Commissioner, 106 T.C. 337 (1996) (finding no disability where taxpayer sought periodic professional consultation for his depression but did not require supervision within the meaning of section 1.72-17A(f)(2)(vi), Income Tax Regs.).

Accordingly, petitioner's distribution from the retirement board on April 22, 2011, was not attributable to his being disabled within the meaning of section 72(m)(7). Petitioner has not shown that any other exception to the section 72(t) early withdrawal penalty applies. See El v. Commissioner, 144 T.C. __, __ (slip op. at 14-15) (Mar. 12, 2015).

III.    Cancellation of Indebtedness Income

Gross income includes all income from whatever source derived, including income from the discharge of indebtedness.  Sec. 61(a)(12).  However, if a taxpayer is insolvent when the discharge of indebtedness occurs, the amount otherwise includable is excluded from gross income.  Sec. 108(a)(1)(B).  The amount excluded from gross income may not exceed the amount by which the taxpayer is insolvent.  Sec. 108(a)(3).  "Insolvent" within the meaning of section 108 is defined as the excess of a taxpayer's liabilities over the fair market value of assets.  Sec. 108(d)(3).  The existence and extent of a taxpayer's insolvency are determined on the basis of the taxpayer's assets and liabilities immediately before the discharge of indebtedness.  Id.  The burden of proving insolvency rests with the taxpayer.  Rule 142(a); see also Merkel v. Commissioner, 109 T.C. 463, 467 (1997), aff'd, 192 F.3d 844 (9th Cir. 1999); Adeyemo v. Commissioner, T.C. Memo. 2014-1; Hugee v. Commissioner, T.C. Memo. 2013-241.

Petitioner did not provide the Court with any documentation relating to his financial status at the time he received a cancellation of indebtedness on August 25, 2011.  Petitioner provided respondent a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, dated November 11, 2014, that claims to represent his financial circumstances immediately before

Wells Fargo canceled his debt. Neither party supplied the Form 433-A to the Court. We are not required to take petitioner's testimony regarding his situation at face value, and he has not provided sufficient documentation upon which we could base a finding of insolvency. See Adeyemo v. Commissioner, T.C. Memo. 2014-1. Petitioner has not proved that he was insolvent within the meaning of section 108(a)(1)(B) when he received a discharge of indebtedness on August 25, 2011. Accordingly, petitioner's 2011 gross income includes $3,186 from the cancellation of indebtedness.

In reaching our holding, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.